# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROBERT HEMP,

    Petitioner,

                                       CASE NO. 2:08-CV-10806

v.                                  HONORABLE MARIANNE O. BATTANI
                                       UNITED STATES DISTRICT JUDGE

LINDA METRISH,

    Respondent.

_____/

## OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Robert Hemp, ("Petitioner"), confined at the Kinross Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his Wayne Circuit Court conviction for two counts of first-degree criminal sexual conduct, MICH. COMP. LAWS 750.520b(1)(d), and one count of assault with intent to do great bodily harm, MICH. COMP. LAWS 750.84. Petitioner was sentenced to two 15-to-30 year terms for the criminal sexual conduct convictions and to a concurrent term of 80-to-120 months for the assault conviction. For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

1

## I. Background

The victim, Rewa Thrushman, was raped at the Liberty Riders Motorcycle Club in the early morning hours of May 19, 2002. Petitioner does not dispute that he cut Thrushman's throat and stabbed her in the back after she was raped, but he claims that he did not participate in the rape itself and is therefore innocent of the criminal sexual conduct charges. His claim is supported by an affidavit signed by Thrushman stating that Petitioner was not one of the men who raped her. Petitioner used this affidavit to support a motion for relief from judgment he filed in the state trial court. The successor to the trial judge held an evidentiary hearing on the claim, and the victim testified that the statements in her recanting affidavit were false, and that she had been manipulated by Petitioner into signing it. The trial court, however, found that the statements in the affidavit were true, and granted Petitioner a new trial on the criminal sexual conduct charges. The prosecutor appealed this decision, and the Michigan Court of Appeals summarily reversed the decision of the trial court. The Michigan Supreme Court denied leave to appeal. In the present case, Petitioner argues that his constitutional rights were violated by the introduction of the victim's perjured testimony at his trial, and that he was denied due process when the Michigan Court of Appeals summarily reversed the trial court's decision.

Petitioner was tried jointly with another member of the Liberty Riders, Kenneth Brown, before Judge Kym Worthy in the Wayne Circuit Court. Rewa Thrushman testified at trial that in the Spring of 2002 she was at a bar in Detroit and saw Glen Thomas and Gerald Fenwick, members of the Liberty Riders, whom she had not seen for over eight years.

2

Thrushman was aware that the father of her children, "Pollock," was a disliked former member of the motorcycle club, but she nevertheless decided to reminisce with them. After the bar closed, Thomas took Thrushman, who was intoxicated after drinking alcohol and using cocaine, to the Liberty Riders clubhouse.

Someone at the clubhouse introduced Thrushman to Kenneth Brown and Petitioner. The victim spoke to Brown briefly, but he became angry about her association with "Pollock." About half an hour later, Brown suddenly threw Thrushman face down over a bar table and held her from behind as Petitioner approached her from the front. Someone pulled her pants and underwear off. Brown forced his penis inside the Thrushman's vagina and pushed her head down while Petitioner put his penis in her mouth. A third person said "sit here and take it, bitch" and punched her in the face.

After the assault, Thrushman went to the bathroom to clean up. While she was at the sink, Petitioner walked into the bathroom and grabbed her hair. He pulled her head up out of the sink and sliced her throat with a knife. He then stabbed her in the back and walked out of the room. The victim saw blood saturate her sweater and heard air bubbling sounds coming from her back. She leaned against the wall and fell to the floor.

Thrushman heard Brown yell at Petitioner to "clean up" his "mess." She staggered out of the bathroom and asked Petitioner whether they were going to let her die in the clubhouse or take her to the hospital. Petitioner told her that he was going to take her to the hospital, and he fabricated a story for her tell.

When they arrived at the hospital, Thrushman was placed on a gurney and taken

3

inside. As soon as she was in the building, someone asked her who did this, and she told them it was the man who had just dropped her off. Petitioner had already driven away, but the security guard recorded his licence plate number.

Thrushman suffered multiple stab wounds causing substantial bleeding. She had a laceration of more than two inches on the left side of her neck. She also sustained a second laceration in her back that penetrated the muscles and caused a partial collapse of one of her lungs. A toxicology report indicated that Thrushman had an alcohol level of .23 and that she had cocaine in her system. The hospital also collected evidence for the rape kit, but there was insufficient material found for DNA profiling. Thrushman also suffered an abrasion on her genitalia consistent with rubbing or force that would break the skin.

The license plate information indicated that Petitioner was the registered owner of the vehicle that drove Thrushman to the hospital. Thrushman subsequently identified Petitioner from a photographic line-up. The police executed a search warrant at the Liberty Riders clubhouse and found suspected blood in the women's bathroom. They also obtained about 100 club member photographs, from which the victim identified Kenneth Brown.

Gerald Fenwick testified for Petitioner. According to Fenwick, the victim agreed to go home with him to have sex. Glenn Thomas also testified for the defense. He testified that the victim took him to the basement of the clubhouse and asked for some drugs, but he told her that he did not have any drugs. Thomas testified that the victim then asked if she could "get with your bro, James Dean [Hemp]." According to Thomas, the victim promised that she would "take care" of him, as well. But when they returned upstairs, the victim went straight

4

to Petitioner and started hugging and kissing him, so Thomas left.

On rebuttal, the victim testified that she never went into the basement with Glen Thomas, she never told Thomas that she wanted to have sex with Petitioner, and she did not "hang on" or kiss Petitioner.

The jury convicted Petitioner and Brown of two counts of first degree criminal sexual conduct and one count of assault with intent to do great bodily harm less than murder.

Petitioner appealed his conviction to the Michigan Court of Appeals. His appellate brief raised two claims: (1) the trial court erroneously instructed the jury regarding aiding and abetting, and (2) the trial court erroneously instructed the jury on a lesser cognate offense. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Hemp*, No. 247716 (Mich. Ct. App. Sep. 23, 2004). Petitioner, represented by his current counsel, filed an application for leave to appeal this decision in the Michigan Supreme Court, but the application was denied by form order. *People v. Hemp*, No. 127433 (Mich. Sup. Ct. Mar. 29, 2005).

On March 29, 2005, through present counsel, Petitioner filed a motion for relief from judgment in the trial court. The motion challenged Petitioner's criminal sexual conduct conviction on the ground that he had newly discovered evidence that Thrushman falsely testified at trial that Petitioner sexually assaulted her. The motion did not seek relief with respect to Petitioner's assault with intent to do great bodily harm conviction. The motion was accompanied by an affidavit signed by Thrushman recanting her trial testimony:

I have been clean and sober for about 1 1/2 years. Over the years, things have

been coming back to me from what happened on 5/18/02. I now remember Robert Hemp did not force me to have sex nor did he help Mr. Brown to have sex with me. Mr. Brown did not force me to have sex with Mr. Hemp. Mr. Hemp was in front of me when I had forced oral sex, but I did not have oral sex with Mr. Hemp.

I remember kissing and flirting with Mr. Hemp before I was forced to have sex. That is the only time I can remember having any sexual contact with Mr. Hemp on 5/18-19/02.

This has been bothering me for a long time now. Once I realized what really happened I wanted to get the record straight. Robert Hemp did not force me to have sex.

I would be willing to go to court and testify to what really happened.

I have been trying to get this out in the open for awhile. I know that telling the truth puts me at risk but the truth has to come out.

No one has promised me anything to tell the truth. I am doing this because it is the right thing to do.

Judge Worthy's successor, Judge David J. Allen, held an evidentiary hearing on the motion for relief from judgment.

Thrushman testified at the hearing that she signed the affidavit, but she said that the statement was "bogus." She testified that she signed the affidavit to help Petitioner, but she repeatedly testified that its contents were not true. Thrushman affirmed that her trial testimony was the truth, and she recounted that Petitioner forced oral sex on her while Kenneth Brown was standing behind her forcing vaginal sex.

Petitioner's counsel attacked Thrushman's credibility by using numerous letters that she wrote to Petitioner while he was in prison. Many of these letters, which were admitted as exhibits at the hearing, reveal her desire to recant her trial testimony regarding Petitioner

6

raping her. Other letters, including an "Application for Love," indicate that Thrushman had developed romantic feelings for Petitioner.

Thrushman responded by claiming that over the years Petitioner manipulated her to the point that she started doubting what really happened, but that nevertheless the truth was that Petitioner did rape and stab her. Thrushman testified that the prosecutor had showed her a correspondence by another inmate to Petitioner that suggested that Petitioner was manipulating Thrushman to gain his freedom. When Thrushman saw this letter, she realized that Petitioner had been manipulating her.

Thrushman explained that she contacted Petitioner a year after the crime because she wanted Petitioner to tell her why the crimes occurred and to find out who else was involved. The victim testified that she suspected that the assault may have had something to do with her prior relationship with "Pollock." Petitioner responded to the victim's first letter by sending her a birthday card and an application for her to visit him in prison. He told her that "there were was a lot of things that she needed to know that he could only tell her 'face to face.'" Thrushman agreed to meet Petitioner in prison, but her application to visit Petitioner was rejected by the Department of Corrections.

Petitioner testified at the hearing that the victim was hanging on him and kissing him at the clubhouse, and that she pulled him into the bathroom to perform fellatio. Thrushman asked him if there was some place more comfortable for them to go, so Petitioner went upstairs to find somewhere they could go. When Petitioner returned downstairs, however, he saw Thrushman completely naked and performing fellatio on Kenneth Brown.

7

Petitioner testified that he was upset and so he followed the victim into the bathroom when she was through with Brown. Petitioner testified that he only wanted to "put a scare into her" so he "put a knife to her neck." Petitioner explained that he pressed "a little too hard" and cut her throat. When he realized what he had done, he "freaked out" and stabbed her in the back. Petitioner testified that he walked out of the bathroom, gathered Thrushman's clothes, brought them to the bathroom, helped her get dressed, and took her to the hospital.

Petitioner testified that he was shocked when he received a letter from Thrushman in prison. He admitted that after he was contacted, he sent Thrushman a visitor's application, and that he wrote her "fantasy" letters. He testified that he never attempted to manipulate Thrushman, but he only expressed his agreement that she should tell the truth about what happened at the clubhouse.

Gary Sumeracki, a former Detroit police officer, testified regarding Thrushman's statements to him recanting her trial testimony and the execution of her affidavit. He testified that she clearly and consistently told him that her trial testimony about the rape was false, and she did not hesitate in executing the affidavit.

The trial court rendered its decision from the bench. It found that Petitioner was entitled to a new trial because Thrushman's trial testimony was false and the statements in her affidavit were true: "the Court doesn't believe one word from her mouth at that exam. . . . And her credibility is betrayed by her testimony at this hearing. That recantation that she gave originally is the truth, and that's supported by a lot of things that we have just gone

over." Id., at 21. The trial court reasoned that it was the prosecutor who convinced Thrushman to retract her recantation: "Thrushman did testify that after she read the letter [found in Petitioner's cell], it was then that she told [the prosecutor] the affidavit was false and thus recanting her recantation to hurt Hemp and not to set the record straight as she had said at least a dozen times in a dozen other letters." Id., at 23.

On April 2, 2007, the prosecutor filed an application for leave to appeal this decision in the Michigan Court of Appeals. Petitioner failed to file a response to the application withing the 21-day deadline. The Michigan Court of Appeals summarily reversed the decision of the trial court:

> The Court orders, pursuant to MICH. CT. RULE 7.205(D)(2), that the trial court's March 16, 2007 order is REVERSED to the extent it granted defendant's motion for relief from judgment and a new trial on the criminal sexual conduct charges. The trial court's decision to grant a new trial on the basis of newly discovered evidence is reviewed for an abuse of discretion. *See People v. Cress*, 468 Mich. 678, 691 (2003). Where newly discovered evidence takes the form of a recantation, it is traditionally suspect and untrustworthy. *See People v. Canter*, 197 Mich. App. 550, 559 (1992). In this case, the recantation is even more suspect and untrustworthy because the victim subsequently repudiated the recantation. Also, in light of the victim's repudiation, the recantation does not make a different result probable on retrial. *See generally, Cress, supra* at 692. Under the circumstances of this case, the trial court abused its discretion in granting defendant a new trial.

*People v. Hemp*, No. 277171 (Mich. Ct. App. June 1, 2007).

Petitioner filed a motion for reconsideration explaining the reason he was unable to file a timely answer to the prosecutor's application for leave to appeal, and he also asserted grounds for upholding the decision of the trial court. On July 16, 2007, the Michigan Court of Appeals denied the motion for reconsideration by form order. Petitioner filed an

9

application for leave to appeal in the Michigan Supreme Court that raised two claims: (1) the trial court did not abuse its discretion when it granted Petitioner a new trial where the decision was supported by the evidence admitted at the hearing, and (2) Petitioner's conviction violated due process because it was based on perjured testimony. The Michigan Supreme Court denied leave to appeal by form order. *People v. Hemp*, No. 134794 (Nov. 29, 2007).

Petitioner now seeks a writ of habeas corpus based on two claims:

I. A conviction based on perjured testimony violated the due process rights of defendant.

II. The summary reversal of the trial court by the Michigan Court of Appeals, without deference to the factual findings of the trial judge, without a brief from the defendant, and without submission or argument of the case, denied the Petitioner his basic due process rights on appeal.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. Discussion

### A. Introduction of Perjured Testimony Claim.

Petitioner asserts that he is entitled to habeas relief because the prosecution based his conviction on perjured testimony and he has newly-discovered evidence of innocence. In support of this claim, he offers Thrushman's recanting affidavit. Petitioner asserts that Judge Allen's factual finding that the statements in the affidavit are true is binding on this Court. Respondent contends that the claim lacks merit.

The Michigan Court of Appeals reversed the trial court's decision and denied relief on this claim by finding that Thrushman's recantation was "untrustworthy" and would not make a difference in the probable results at retrial, particularly given that she repudiated the recantation at the evidentiary hearing.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The United States Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972). It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

A habeas petitioner bears the burden of proving that the disputed testimony

constituted perjury. *Napue*, 360 U.S. at 270. Recantation of testimony alone, however, is insufficient to establish a due process violation. To prevail on a claim that a conviction was obtained through the use of perjured testimony, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew (or should have known) that the statements were false. *Coe*, 161 F.3d at 343.

Petitioner has made no such showing. First, he has not demonstrated that Thrushman's trial testimony was actually false. To be sure, Thrushman's affidavit states that her trial testimony was false inasmuch as it identified Petitioner as one of the men who raped her. But at the evidentiary hearing Thrushman unequivocally repudiated that recantation. She explained that even though she was the one who first contacted Petitioner in prison, she had been manipulated by him.

The fact that Judge Allen made a factual finding that the statements in the affidavit were true and that Thrushman's trial and hearing testimony were false, does not bind this Court. In reviewing a state court finding in a habeas action, "a determination of a factual issue made by a State court shall be presumed to be correct" unless shown otherwise by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness does not end with the finding of the state trial court, but it also applies to state appellate courts' findings of fact. *Sumner v. Mata*, 449 U.S. 539 (1981); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003). A state trial court's factual findings made after a post-conviction hearing do not survive review by a state appellate court where they were neither adopted nor incorporated into the appellate court's peremptory denial of relief, but instead are directly

inconsistent with the appellate court's decision. *Micheaux v. Collins*, 944 F.2d 231, 232 (5th Cir. 1991) (en banc). Here, the decision of the Michigan Court of Appeals is plainly inconsistent with the factual findings made by Judge Allen. Contrary to the decision of the trial court, the appellate court found that Thrushman's affidavit was "suspect and untrustworthy," and it found that the trial court abused its discretion in granting Petitioner a new trial. This explicit reversal of the trial court's legal conclusion also constitutes an implicit reversal of the factual findings that formed the only basis for the trial court's legal decision. This Court is therefore not bound by Judge Allen's factual findings because they did not survive appellate review in the state courts.

The affidavit by itself, of course, does not establish that Thrushman's trial testimony was false. Affidavits by witnesses recanting their trial testimony are viewed with extreme suspicion. *See McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007); *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001). Thrushman's affidavit is particularly suspect given her hearing testimony explaining that she was manipulated into believing that Petitioner had not raped her. Additionally, the unchallenged evidence that Petitioner was the man who slit Thrushman's throat and stabbed her in the back after she was raped tends to indicate that he participated in the rape either as a principal or as an aider and abettor. *See, e.g., Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2005) (uncorroborated recantation is "even more unreliable" where trial testimony was consistent with other evidence and recantation was not).

Second, Petitioner has not alleged any facts to establish that the prosecution

knowingly presented false testimony. The fact that a witness contradicts herself or changes her story does not establish perjury. *See United States v. Wolny*, 133 F.3d 758, 763 (10th Cir. 1998); *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993). Additionally, the prosecution had reason to believe that Thrushman testified truthfully at trial after she explained the reasons for signing the affidavit and because her testimony was consistent with the other evidence at trial. Petitioner has failed to establish that the prosecution relied upon perjured testimony or knowingly presented false testimony. He is therefore not entitled to habeas relief on this claim.

Petitioner also asserts that he is entitled to relief because he is actually innocent. But "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact." *Id.* In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera* - whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas

15

relief. *See Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007)("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [petitioner] is not entitled to relief under available Supreme Court precedent"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007); *see also Sitto v. Lafler*, 279 Fed. Appx. 381, 2008 WL 2224862, *1 (6th Cir. 2008); *Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005). Thus, Petitioner's claim that he is actually innocent and has newly-discovered evidence to prove it does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 606 (E.D. Mich. 2001). He is thus not entitled to relief on such a basis.

### B. <u>Inadequacy of State Appellate Review Claim</u>.

Petitioner next asserts that his due process rights were violated by the Michigan Court of Appeals summary reversal of the trial court's decision to grant him a new trial. Specifically, Petitioner complains that the state appellate court did not give an appropriate amount of deference to the trial court's factual findings, that it decided the case without waiting for Petitioner to file an out-of-time answer, and that it reversed the decision before granting leave to appeal and entertaining argument. None of these claims are cognizable.

Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition. *Williams-Bey v. Trickey*, 894 F. 2d 314, 317 (8th Cir. 1990); *See also Cress, supra* 484 F.3d

at 853; *Kirby v. Dutton*, 794 F.2d 245, 247-248 (6th Cir. 1986)(defendant's claims that he was denied the effective assistance of counsel, due process, and equal protection in state's post-conviction proceedings were unrelated to his detention and could not be brought in a federal habeas corpus petition).

In *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002), the Sixth Circuit rejected a similar argument. The petitioner in that case argued that irregularities in the Ohio appellate courts deprived him of a full and fair hearing in the appellate review of his post-conviction claims because the appellate court refused to consider the transcript of the testimony at the post-conviction hearing. The petitioner alleged that this failure to consider the transcript constituted a violation of due process and equal protection. Relying on *Kirby*, the Sixth Circuit found that the claim was not amenable to habeas review because habeas relief may not be granted to a habeas petitioner for the alleged types of deficiencies in a state's post-conviction procedures. *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002). So too here, even if the Michigan Court of Appeals gave short-shrift to the trial court decision to grant Petitioner a new trial and did so without waiting for a late brief from Petitioner and without first granting leave to appeal, Petitioner's federal constitutional rights were not implicated because he had no constitutional right to post-conviction review.

## IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a

prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

The Court denies Petitioner a Certificate of Appealability because he failed to make a substantial showing of the denial of a federal constitutional right. Even if there can be some question as to the effect that the state trial court's factual finding that the victim lied at trial has on habeas review, there is no evidence that the prosecutor knowingly put on perjured testimony at trial. Without such evidence, Petitioner's claim amounts to a non-cognizable freestanding claim that is actually innocent. Jurists of reason would therefore not find this Court's resolution of Petitioner's claims to be debatable, or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## V. ORDER

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

s/Marianne O. Battani
**HONORABLE MARIANNE O. BATTANI**
**UNITED STATES DISTRICT JUDGE**

**Dated:** December 2, 2010

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner, and Counsel for the Respondent.

s/Bernadette M. Thebolt
Case Manager